UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: _____

| | |
|---|---|
| JOHN KRANERT, ONICA KRANERT, and VITALIY ARISKIN, as individuals,<br><br>Plaintiffs,<br><br>- against -<br><br>CITY OF HOMESTEAD, FLORIDA,<br><br>Defendant. | **PLAINTIFFS' VERIFIED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>CIVIL RIGHTS ACTION TITLE 42 U.S.C. § 1983<br><br>DECLARATORY RELIEF, INJUNCTIVE RELIEF AND DAMAGES |

**PLAINTIFFS' COMPLAINT**

COME NOW the Plaintiffs, JOHN KRANERT, ONICA KRANERT, and VITALIY ARISKIN, as individuals (hereinafter "Plaintiffs"), by and through their counsel, and as their cause of action against the Defendant herein, aver as follows:

**INTRODUCTION**

1.  Plaintiffs bring this action seeking declaratory and injunctive relief and damages to redress deprivations by the Defendant, CITY OF HOMESTEAD, FLORIDA, acting under color of state law, of certain rights secured to the Plaintiffs and others as alleged herein under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

2.  This action challenges the interpretation and enforcement (as applied challenge) of Chapter 2, Article VI of the City of Homestead Code of Ordinances, - DEMONSTRATIONS AND PARADES (hereinafter "Code").

Plaintiffs' Verified Complaint – Page 1

3.      This action challenges Chapter 2, Article VI of the City of Homestead Code of Ordinances, - DEMONSTRATIONS AND PARADES (hereinafter "Code") as written (facial challenge).

## PARTIES

4.      Plaintiff, JOHN KRANERT, is an adult citizen and resident of Florida and brings this action in his personal capacity.

5.      Plaintiff, ONICA KRANERT, is an adult citizen and resident of Florida and brings this action in her personal capacity.

6.      Plaintiff, VITALIY ARISKIN, is an adult citizen and resident of Florida and brings this action in his personal capacity.

7.      Defendant, CITY OF HOMESTEAD, FLORIDA (hereinafter "City" or "Defendant"), is a body politic and corporate located within the State of Florida and has the ability to sue and be sued. The Defendant City has the right, power, privilege and authority to adopt and enforce the Code and other regulations and to do and perform all of the acts pertaining to its local affairs. At all material times, Defendant City acted toward Plaintiffs under color of the statutes, ordinances, customs, and usage of the State of Florida and the Defendant City. The Defendant City knew of the unlawful enforcement of the City's Code alleged herein, and had the power and authority to remedy the unlawful enforcement, but failed to do so. The Defendant City, by both its acts and failure to act, has ratified the unlawful enforcement of the City Code.

## JURISDICTION AND VENUE

8.      Plaintiffs bring this action seeking declaratory and injunctive relief, and damages to redress deprivations by the Defendant, acting under color of state law, of certain rights

secured to the Plaintiffs and others as alleged herein under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, as brought pursuant to Title 42 U.S.C. § 1983.

9.      Jurisdiction is conferred on this Court by Title 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983.

10.     Jurisdiction is also conferred on this Court by Title 28 U.S.C. § 1331 because the cause of action arises under the Constitution and laws of the United States.

11.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1343(a)(4), as this civil action seeks to recover damages and equitable relief under an Act of Congress providing for the protection of civil rights.

12.     This Court has supplemental subject matter jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims form part of the same case or controversy as the federal claims.

13.     This Court is authorized to grant Declaratory Judgment under the Declaratory Judgment Act, Title 28 U.S.C. §§ 2201 and 2202 (1988), implemented through Rule 57 of the Federal Rules of Civil Procedure, and under Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, and to issue the Preliminary and Permanent Injunctive relief requested by Plaintiffs under Rule 65 of the Federal Rules of Civil Procedure.

14.     This Court is authorized to grant Plaintiffs' prayer for relief and to award Plaintiffs' costs in this action for violations of Plaintiffs' constitutional and civil rights, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and

Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, and Rule 54, and Title 28 U.S.C. § 1920.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant resides and/or does business in the Southern District of Florida and may be found and served in the Southern District of Florida.

16.     Venue is proper in the Southern District of Florida as all of the events giving rise to the claims herein occurred in this District.

## FACTS

17.     Plaintiffs are individuals acting to spread awareness of their views regarding religious, political, and social topics.

18.     Among Plaintiffs' purposes is the belief in a mandate to exercise their rights to freedom of speech and association to further their religious, political, and social beliefs.

19.     Plaintiffs bring this action to vindicate and protect their own rights to Freedom of Speech and Assembly and Free Exercise of Religion as well as affirm those rights for citizens and members of the public desiring to engage in activities similar to Plaintiffs' activities in the City by ensuring that Defendant is restrained from acting prospectively in violation of those rights.

20.     The public parks, public streets, public sidewalks, and public rights-of-way within the jurisdiction of the City (hereinafter "Public Spaces") are traditional public fora.

21.     Plaintiffs, citizens, and members of the public utilize the Public Spaces for various activities, including communication and the exchange of ideas.

22.     Plaintiffs, citizens, and members of the public utilize the Public Spaces within the City for various activities, including communication and the exchange of ideas.

## Plaintiffs' planned activities

23.    Plaintiffs have shared their religious, political, and social speech with people in the City.

24.    Plaintiffs' message is one of hope and salvation that Christianity offers.

25.    Plaintiffs have not harassed, encouraged violence, or expressed themselves in any way other than in a peaceful manner.

26.    Plaintiffs desire to continue their peaceful activities without being cited and fined.

27.    Plaintiffs share their faith in various ways.

28.    Plaintiffs distribute free literature.

29.    Plaintiffs record public events for commentary and distribution.

30.    Plaintiffs engage others in respectful, one-on-one discussions about Jesus Christ and the Christian faith.

31.    Plaintiffs have a religious mandate to go to Public Spaces in the City.

32.    On upcoming days, including but not limited to days from the present through December 2021, Plaintiffs have concrete plans to engage in their constitutionally protected activities by peacefully expressing religious, political, and social speech within the City's Public Spaces.

33.    As a direct and proximate result of the Defendant's prior enforcement of the City's Code, and the terms of the Code as written, Plaintiffs have forfeited their constitutionally protected activities due to fear of citation, fines, and arrest.

## The City's Code

34.    The City adopted the Code.

35.    The Code states in relevant part:

**Sec. 2-358. - Permit required; exceptions.**

It shall be unlawful for any person to sponsor, organize, direct, lead or participate in any parade or demonstration upon any street or sidewalk or upon or in any public place within the city unless a city permit has been granted to hold such parade or demonstration. This article shall not apply to parades, processions or convoys of any component of the armed forces of the United States or this state or to any governmental organization, or to any funeral procession.

**Sec. 2-356. - Definitions.**

Demonstration shall mean a group of three (3) or more persons assembled together and acting in concert to call attention of the public to their opposition, support or position with respect to any political, social or other controversial subject.

**Sec. 2-359. - Application for permit.**

(a)  Any person desiring to sponsor, organize, direct or lead a parade or demonstration upon any street or sidewalk or public place within the city shall file an application for a parade or demonstration permit with the city clerk.

(b) Such application shall be [sic] set forth:

(1) The date and hour for the assembling of the participants in such parade or demonstration and the expected duration;

(2) The streets, sidewalks and public places where the parade or demonstration is to take place;

(3) Whether the parade or demonstration is to be conducted on foot or with animals or vehicles or any combination thereof, and the number of persons, vehicles and animals expected to participate;

(4)  The purpose of the parade or demonstration;

(5)  The names and addresses of the actual sponsors of such parade or demonstration and the organization or organizations of which the expected participants are members;

(6)  The name and address of the person who shall be in charge of such parade or demonstration and who shall be responsible for the conduct thereof and for compliance with all applicable provisions of law, this Code and other ordinances by participants in such parade or demonstration;

(7)  Such other information as the city council may require.

**Sec. 2-361. - Consideration of application for permit; granting or denial of permit.**

Upon the filing of a completed and properly signed and sworn application for a parade or demonstration permit, the city clerk shall transmit copies promptly to all members of the city council. The city council at its next meeting shall consider such application. If the city council finds such parade or demonstration would not be detrimental to the good government or the peace, safety, health or welfare of the city or the inhabitants thereof, and would not constitute a threat to the maintenance of law and order or cause unacceptable traffic conditions within the city, the permit applied for shall be granted. If, however, the city council, in the exercise of sound discretion and in view of circumstances then existing, considers that the holding of such parade or demonstration would be detrimental to the good government or the peace, safety, health or welfare of the city or the inhabitants or would constitute a threat to the

maintenance of law and order or would cause unacceptable traffic conditions within the city, the permit shall be denied.

**Sec. 2-362. - Conditions of permit and required compliance therewith.**

(a)  In granting a permit pursuant to this article the city council may include therein such prohibitions, conditions, restrictions and limitations as it may consider appropriate, under the general police powers of the city, to safeguard the good government and the peace, safety, health and welfare of the city and the inhabitants thereof, as well as to maintain law and order and acceptable traffic conditions within the city, and it shall be unlawful for any person covered by the permit to violate or fail to comply with any such prohibition, condition, restriction or limitation.

**Sec. 2-363. - Authority of city council to require posting of bond.**

Prior to the granting of a permit pursuant to this article and a condition precedent for the granting of such permit, the city council may require that the person named in the application as the one to be responsible for the conduct of the parade or demonstration shall give bond to the city in such amount and with such surety as the city council may consider necessary, conditioned upon the full satisfaction of all judgments and decrees which may result by reason of negligent or unlawful act or omission of any person participating in such parade or demonstration and included within the permit. It shall include the condition that he will save the city harmless from all claims and demands whatever which may arise by reason of such parade or demonstration. It shall include the condition that he will pay the city for all extra expenses incurred for clearing the streets, sidewalks and public places of litter and

waste matter resulting from such parade or demonstration and for the cleaning and repair of public property which may be soiled or damaged by acts of vandalism during the period of organizing and holding the parade or demonstration and within six (6) hours thereafter when such acts of vandalism are reasonably attributable to the holding of such parade or demonstration.

**Sec. 2-366. - Signs, pennants, stickers, etc.**

No person parading or demonstrating pursuant to a permit issued under the provisions of this article shall carry or display any sign, pennant, sticker or other device which contains any scurrilous or obscene words, language or illustrations calculated to arouse public hatred or anger or tending to incite any breach of the public peace.

**Sec. 2-367. - Dispersal of riots and unlawful assemblies; arrest of persons who disobey command to disperse.**

Parades and demonstrations held pursuant to a permit issued under the provisions of this article which become, or which reasonably appear to present an imminent threat to becoming, a riot or unlawful assembly shall be dispersed by the city police or by any law enforcement officer who may be present. Persons who are commanded to disperse by any law enforcement officer shall promptly obey such command and peacefully leave such parade or demonstration and leave the scene thereof. Persons who fail to obey such command shall be subject to immediate arrest.

**The Plaintiffs' attempts to avoid litigation and the Defendant's interpretation and enforcement against Plaintiffs**

36.     On November 16, 2016, Plaintiffs' counsel sent a letter to the City Manager, City Attorney, and City Clerk regarding Plaintiffs' planned activities. *See* attached Exhibit 1.

37.     On November 18, 2016, the City Attorney replied to Plaintiffs' counsel stating the City's Code required a permit for Plaintiffs' activities. *See* attached Exhibit 2.

38.     The City Attorney's November 18, 2016, letter stated in part:

> "Chapter 2, Article VI of the City of Homestead Code of Ordinances (the "City Code") makes it unlawful for any person seeking to sponsor, organize, direct, lead or participate in any parade or demonstration [1] [upon any street or sidewalk or upon or in any public place within the city without obtaining a permit, approved by the City Council prior to engaging in such activities (the "Permit"). [footnote 1 – "'Demonstration' shall mean a group of three (3) or more persons assembled together and acting in concert to call attention of the public to their opposition, support or position with respect to any political, social or other controversial subject."]

39.     The City Attorney's November 18, 2016, letter stated that pursuant to the City's Code, a permit application must first be received and approved by the City.

40.     The City Attorney's November 18, 2016, letter stated that Plaintiffs had not complied with the City's Code permit requirements.

41.     The City Attorney's November 18, 2016, letter enforced the City's Code against Plaintiffs by stating that Plaintiffs had not complied with the City's Code permit requirements and are required to comply with the City's Code permit requirements before sharing their message in the City.

42.     The City Attorney's November 18, 2016, letter made no reference to a "free speech zone" anywhere in the City.

43.     On November 20, 2016, the City enforced the City's Code against Plaintiffs.

44.     On November 20, 2016, the Plaintiffs and their associates were sharing their message in the City in Public Spaces open to the general public.

45.     On November 20, 2016, the Plaintiffs and their associates were displaying signs.

46.     On November 20, 2016, the Plaintiffs and their associates were displaying signs containing messages on religious topics.

47.     On November 20, 2016, the Plaintiffs and their associates were distributing Christian literature only to people willing to accept it.

48.     On November 20, 2016, the Plaintiffs and their associates were distributing Christian literature in a manner not impeding pedestrians.

49.     On November 20, 2016, the officer in charge at the scene was the City's employee, Captain DeJohn, who was acting under color of state law on behalf of the City.

50.     On November 20, 2016, the City enforced the Code against Plaintiffs when the City's agents, employees, and officers, including Captain DeJohn, acting under color of state law, informed Plaintiffs that they were required to obtain a permit in order to peacefully share their message in the City's Public Spaces.

51.     On November 20, 2016, the City enforced the Code against Plaintiffs when the City's agents, employees, and officers, including Captain DeJohn, acting under color of state law, required Plaintiffs to vacate their location and relocate to a "free speech zone" in order to peacefully share their message in the City's Public Spaces.

52.     The City exercised discretion not authorized by the Code, or any other known authority, by creating and enforcing a "free speech zone."

## GENERAL ALLEGATIONS

53.     As written, the Code requires a permit before Plaintiffs may engage in peaceful expression of their message creating an unconstitutional prior restraint.

54.     As written, the Code requires a permit before Plaintiffs may engage in peaceful expression of their message creating an unconstitutional prior restraint by failing to provide for the necessary procedural safeguards.

55.     The manner in which the Code was enforced against Plaintiffs on November 18, 2016, under color of state law, creates an unconstitutional prior restraint.

56.     The manner in which the Code was enforced against Plaintiffs on November 20, 2016, under color of state law, creates an unconstitutional prior restraint.

57.     As written, the Code creates an unconstitutional content-based restriction.

58.     As written, the Code creates an unconstitutional viewpoint-based restriction.

59.     As written, the Code creates unconstitutional unbridled discretion.

60.     As written, the Code creates unconstitutional vagueness violating due process.

61.     As written, the Code creates unconstitutional vagueness violating equal protection.

62.     As written, the Code creates an unconstitutional bond requirement.

63.     The Defendant's enforcement of the Code and the actions of Defendant under color of state law has deprived, and continues to deprive, Plaintiffs of their constitutional and civil rights.

64.     As a direct and proximate result of the Defendant's enforcement of the Code and the actions of Defendant under color of state law, Plaintiffs have forfeited and lost opportunities to exercise their constitutional and civil rights.

65.     As a direct and proximate result of the Defendant's enforcement of the Code and the actions of Defendant under color of state law, Plaintiffs are uncertain and unsure of their ability to exercise their constitutional and civil rights and as a result Plaintiffs have forfeited and lost opportunities to exercise their constitutional and civil rights such that their rights are chilled and irreparably lost.

66.     Plaintiffs have been damaged by the deprivation of their rights guaranteed by the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

67.     As interpreted and enforced by the Defendant, Plaintiffs' manner of expressing their constitutional and civil rights is prohibited by the Code.

68.     Plaintiffs are uncertain whether they will be cited in the future while attempting to exercise their constitutional and civil rights within the City.

69.     The threat of future citations and fines is both great and immediate.

70.     The future chilling of Plaintiffs' rights is an absolute certainty unless and until this Court grants the injunctive and declaratory relief requested herein.

71.     Defendants have chilled Plaintiffs' constitutional and civil rights to the point that Plaintiffs fear exercising their constitutional and civil rights.

72.     Plaintiffs wish to continue exercising their constitutional and civil rights, and have specific and concrete intentions to continue engaging in the exercise of their constitutional and civil rights, including activities prohibited by the Code, as interpreted and enforced by the Defendants, but they are fearful of being cited for exercising their constitutional and civil rights.

73.    The violations of Plaintiffs' constitutional and civil rights alleged herein have caused, and will continue to cause, Plaintiffs to suffer extreme hardship, actual and impending, irreparable injury, and damage.

74.    Plaintiffs currently suffer from the denial of rights guaranteed by the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, because of Defendant's actions taken under color of law pursuant to official acts of Defendant.

75.    There is a substantial likelihood that Plaintiffs will prevail on the merits in this case because the Defendant's enforcement of the Code and the actions of Defendant under color of state law constitute an abridgement of Plaintiffs' constitutional and civil rights.

76.    The harm to Plaintiffs outweighs any subjective harm to the Defendant.

77.    The public interest is benefited when constitutional and civil rights are protected by the Courts.

78.    The Defendant's enforcement of the Code and the customs, policies, practices, and actions of Defendant under color of state law, deprived Plaintiffs of their rights to Freedom of Speech and Freedom of Religious Expression protected under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

79.    Defendant acted without reasonable cause and without due care in causing the deprivation of Plaintiffs' rights to Freedom of Speech and Freedom of Religious Expression protected under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

80.     As a direct and proximate result of Defendant's actions and omissions under color of state law, Plaintiffs suffered the loss of Plaintiffs' Freedom of Speech and Freedom of Religious Expression rights protected under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

81.     Defendant City had a duty at all times mentioned herein to implement and enforce policies and procedures to adequately supervise and adequately train its officials, agents, and employees so as to prevent the constitutional violations alleged herein.

82.     Defendant City failed to implement and enforce policies and procedures to adequately supervise and adequately train their officials, agents, and employees so as to prevent the constitutional violations alleged herein.

83.     Defendant City's actions and omissions regarding the failure to adequately train their officials, agents, and employees so as to prevent the constitutional violations alleged herein exhibit deliberate indifference toward Plaintiffs' rights to Freedom of Speech and Freedom of Religious Expression protected under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

84.     The Defendant's enactment and enforcement of the Code and Defendant's customs and practices, adopted under color of state law, are the moving force behind the violation of Plaintiffs' rights to Freedom of Speech and Freedom of Religious Expression protected under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

85.     The Defendant's enactment and enforcement of the Code and Defendant's customs and practices, adopted under color of state law, operate to unconstitutionally limit, ban, and censor Plaintiffs' rights to Freedom of Speech and Freedom of Religious

Expression protected under the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05.

86.     As a direct and proximate result of the enforcement of the Code against Plaintiffs on November 18, 2016, and November 20, 2016, Plaintiffs incurred monetary expenses and debt related to the loss of their constitutional and statutory freedoms.

87.     As a direct and proximate result of the Code as written, Plaintiffs incurred monetary expenses and debt related to the loss of their constitutional and statutory freedoms.

88.     Plaintiffs have satisfied all conditions precedent to bringing this action.

89.     Plaintiffs are entitled to recover reasonable attorneys' fees and costs from Defendant pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, and Rule 54, and Title 28 U.S.C. § 1920.

**AS AND FOR A FIRST CAUSE OF ACTION:**

**THE CODE AND DEFENDANT'S ACTIONS
VIOLATE THE FREEDOM OF SPEECH CLAUSE UNDER
THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

90.     The averments of paragraphs 1-89 are repeated and alleged in full force and effect as if repeated in their entirety herein.

91.     The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, prohibits enforcing any law unconstitutionally abridging the Freedom of Speech.

92.     The Code as written and Defendant's policies and practices, and actions impede Plaintiffs' right to Freedom of Speech because of unlawful enforcement and by granting unfettered discretion to Defendant and its officials, agents, and employees to deny Plaintiffs'

right to Freedom of Speech and satisfies no rational, substantial, or compelling government interest in the least restrictive means possible.

93.     As written, the Code is unconstitutionally vague and overbroad and is not narrowly tailored to address the City's interest thereby allowing the City's agents and employees to unconstitutionally restrict and prohibit Plaintiffs' right, and those of the general public, to engage in Freedom of Speech activities otherwise protected under the First Amendment.

94.     The Code as written prohibits Plaintiffs' manner of Freedom of Speech without first obtaining a permit under the requirements of the Code.

95.     As interpreted and enforced by the Defendant, Plaintiffs' manner of Freedom of Speech requires a permit.

96.     Plaintiffs were deprived of their right under the First Amendment to engage in Freedom of Speech activities prohibited by the Code as written and as interpreted and enforced by the Defendant.

97.     Plaintiffs have been, and continue to be, deprived of their right under the First Amendment to engage in Freedom of Speech.

98.     Plaintiffs have suffered damages as a result of Defendant's deprivation of their rights.

WHEREFORE, Plaintiffs respectfully request that this Court grant the equitable and monetary relief requested herein and any further relief this Court deems is just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION:

### THE CODE AND DEFENDANT'S ACTIONS
### VIOLATE THE FREE EXERCISE CLAUSE UNDER
### THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

99.     The averments of paragraphs 1-89 are repeated and alleged in full force and effect as if repeated in their entirety herein.

100.    The First Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, prohibits enforcing any law unconstitutionally abridging the Free Exercise of Religion.

101.    Plaintiffs share a personal belief and mandate to spread the Gospel of Jesus Christ and Plaintiffs, as individuals and as associates, engage in activities for the purpose of spreading the Gospel of Jesus Christ that are prohibited by the Code as interpreted and enforced by the Defendant.

102.    The Bible instructs believers to share the Gospel of Jesus Christ with others, and Plaintiffs rely on the Bible to guide their words and actions.

103.    Plaintiffs sought, and continue to seek, to discuss issues from a religious perspective, to distribute religious literature, to display signs, and to engage in religious speech through sharing their faith.

104.    The Defendant's enforcement requires Plaintiffs to censor their religious speech and impose a burden on Plaintiffs that is not imposed on other individuals.

105.    By forcing Plaintiffs to choose between abandoning their religious beliefs in order to gain access to speech in the City's Public Spaces, including the public sidewalks, or alternatively abiding by their religious beliefs only to be cited, fined, or arrested, the

Defendant has imposed a substantial burden on Plaintiffs' sincerely-held religious beliefs and their religious exercise.

106.    The Code as written and Defendant's policies and practices, and actions impede Plaintiffs' right to Free Exercise of Religion because of unlawful enforcement and by granting unfettered discretion to Defendant and their officials, agents, and employees to deny Plaintiffs' right to Free Exercise of Religion and satisfies no rational, substantial, or compelling government interest in the least restrictive means possible.

107.    As written, the Code is unconstitutionally vague and overbroad and is not narrowly tailored to address the City's interest thereby allowing the City's agents and employees to unconstitutionally restrict and prohibit Plaintiffs' right, and those of the general public, to engage in Free Exercise of Religion activities otherwise protected under the First Amendment.

108.    The Code as written prohibits Plaintiffs' manner of Free Exercise of Religion without first obtaining a permit under the requirements of the Code.

109.    As interpreted and enforced by the Defendant, Plaintiffs' manner of Free Exercise of Religion requires a permit.

110.    Plaintiffs were deprived of their right under the First Amendment to engage in Free Exercise of Religion activities prohibited by the Code as written and as interpreted and enforced by the Defendant.

111.    Plaintiffs have been, and continue to be, deprived of their right under the First Amendment to engage in Free Exercise of Religion activities.

112.    Plaintiffs have suffered damages as a result of Defendant's deprivation of their rights.

WHEREFORE, Plaintiffs respectfully request that this Court grant the equitable and monetary relief requested herein and any further relief this Court deems is just under the circumstances.

### AS AND FOR A THIRD CAUSE OF ACTION:

### THE CODE AND DEFENDANT'S ACTIONS
### VIOLATE THE DUE PROCESS CLAUSE UNDER
### THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

113.    The averments of paragraphs 1-89 are repeated and alleged in full force and effect as if repeated in their entirety herein.

114.    The Fourteenth Amendment to the United States Constitution prohibits any vague law unconstitutionally abridging the Freedom of Speech and/or Free Exercise of Religion.

115.    The Defendant's Code, policies and practices, and failure to adequately supervise and adequately train the Defendant's officials, agents and employees and resultantly enforcement as alleged herein are vague and lack sufficient objective standards to curtail the discretion of Defendant's officials and police officers. This vagueness provides the Defendant and its officials, agents and employees the opportunity to enforce speech restrictions in an *ad hoc*, arbitrary, and discriminatory manner.

116.    The Defendant's adoption and past enforcement of the Code unconstitutionally imposes a burden on Plaintiffs' and other individual's constitutional rights because they:

a.    are vague and overbroad; and,

b.    allow for the exercise of unbridled discretion; and,

c.    lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and,

d.    bar the free speech of Plaintiffs and possibly other third-party citizens in a

traditional public forum.

117.   The Defendant's adoption and past enforcement of the Code unconstitutionally grants unfettered discretion to the Defendant and its officials, agents and employees to deny Plaintiffs' and other individual's constitutional rights and satisfies no rational, substantial or compelling government interest in the least restrictive means possible and they fail narrow tailoring.

118.   Plaintiffs were deprived of their constitutional rights prohibited by the City's Code, as interpreted and enforced by the Defendant.

119.   As written, the Defendant's Code unconstitutionally restricts and prohibits Plaintiffs' rights under the First Amendment to engage in Freedom of Speech and Free Exercise of Religion activities.

120.   As written, the Defendant's Code is unconstitutionally vague and overbroad and is not narrowly tailored to address the City's interest thereby allowing the Defendant's agents and employees to unconstitutionally restrict and prohibit Plaintiffs' right, and those of the general public, to engage in Freedom of Speech and Free Exercise of Religion activities otherwise protected under the First Amendment.

121.   As written, the Defendant's Code impedes Plaintiffs' rights to Freedom of Speech and Free Exercise of Religion because it is so vague it fails to adequately notify persons what is permitted and what is prohibited.

122.   As written, the Defendant's Code impedes Plaintiffs' rights to Freedom of Speech and Free Exercise of Religion because it creates unfettered discretion in reviewing or denying permit applications by unequally applying broad and vague conditions and/or by arbitrarily changing or imposing new requirements on the permit application process.

123.    Plaintiffs were deprived of their rights to engage in Freedom of Speech and Free Exercise of Religion activities prohibited by the Code as written and as interpreted and enforced by the Defendant.

124.    Plaintiffs have been, and continue to be, deprived of their right to engage in Freedom of Speech and Free Exercise of Religion activities.

125.    Plaintiffs have suffered damages as a result of Defendant's deprivation of their rights.

WHEREFORE, Plaintiffs respectfully request that this Court grant the equitable and monetary relief requested herein and any further relief this Court deems is just under the circumstances.

## AS AND FOR A FOURTH CAUSE OF ACTION:

### THE CODE AND DEFENDANT'S ACTIONS
### VIOLATE FLORIDA'S RELIGIOUS FREEDOM RESTORATION ACT

126.    The averments of paragraphs 1-89 are repeated and alleged in full force and effect as if repeated in their entirety herein.

127.    Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, prohibits the Defendant from substantially burdening Plaintiffs' religious exercise absent the Defendant bringing forth evidence that the burden upon Plaintiffs satisfies a compelling government interest in the least restrictive means possible.

128.    Plaintiffs share a personal belief and mandate to spread the Gospel of Jesus Christ and Plaintiffs, as individuals and as associates, engage in activities for the purpose of spreading the Gospel of Jesus Christ that are prohibited by the Code as interpreted and enforced by the Defendant.

129.     The Bible instructs believers to share the Gospel of Jesus Christ with others, and Plaintiffs rely on the Bible to guide their words and actions.

130.     Plaintiffs sought, and continue to seek, to discuss issues from a religious perspective, to distribute religious literature, to display signs, and to engage in religious speech through sharing their faith.

131.     The Defendant's enforcement requires Plaintiffs to censor their religious speech and impose a burden on Plaintiffs that is not imposed on other individuals.

132.     By forcing Plaintiffs to choose between abandoning their religious beliefs in order to gain access to speech in the City's Public Spaces, including the public sidewalks, or alternatively abiding by their religious beliefs only to be cited, fined, or arrested, the Defendant has imposed a substantial burden on Plaintiffs' sincerely-held religious beliefs and their religious exercise.

133.     The Code as written and Defendant's policies and practices, and actions impede Plaintiffs' religious exercise because of unlawful enforcement and by granting unfettered discretion to Defendant and their officials, agents, and employees to deny Plaintiffs' right to religious exercise and satisfies no rational, substantial, or compelling government interest in the least restrictive means possible.

134.     As written, the Code is unconstitutionally vague and overbroad and is not narrowly tailored to address the City's interest thereby allowing the City's agents and employees to unconstitutionally restrict and prohibit Plaintiffs' right, and those of the general public, to engage in religious activities otherwise protected under the First Amendment.

135.     The Code as written prohibits Plaintiffs' manner of religious exercise without first obtaining a permit under the requirements of the Code.

136.     As interpreted and enforced by the Defendant, Plaintiffs' manner of religious exercise requires a permit.

137.     Plaintiffs were deprived of their right under Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, to engage in religious activities prohibited by the Code, as interpreted and enforced by the Defendant.

138.     Plaintiffs have been, and continue to be, deprived of their right under Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, to engage in religious activities.

139.     Plaintiffs have suffered damages as a result of Defendant's deprivation of their rights.

WHEREFORE, Plaintiffs respectfully request that this Court grant the equitable and monetary relief requested herein and any further relief this Court deems is just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1. Assume jurisdiction of this matter,

2. Issue a preliminary and permanent injunction restraining and enjoining Defendant and the officers, agents, employees, representatives, and all persons acting in concert, or participating with Defendant, from enforcing the challenged sections of the Code:

a) in the manner Defendant and its agents and employees enforced it against these Plaintiffs on November 18, 2016 and November 20, 2016; and,

b) in the manner of interpreting that a permit is required under the Code; and,

c) issue the requested injunctive relief without a condition of bond or other security; and,

3. Issue Declaratory Judgment under the Declaratory Judgment Act to determine the parties' rights and duties regarding enforcing the challenged sections of the Code by prohibiting enforcement:

a) in the manner Defendant and its agents and employees enforced it against these Plaintiffs on November 18, 2016 and November 20, 2016; and,

b) in the manner of interpreting that a permit is required under the Code; and,

4. Enter a judgment and decree declaring that the actions taken by Defendants in prohibiting Plaintiffs from expressing their views on a public sidewalk on November 20, 2016, violated Plaintiffs' constitutional rights, specifically, their rights to free speech, free exercise, due process and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05; and,

5. Enter a judgment and decree declaring the challenged portions of the Code are unconstitutional on their face and as applied to Plaintiffs' desired speech because they violate Plaintiffs' rights guaranteed under the First and Fourteenth Amendments to the United States Constitution and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05; and,

6. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment; and,

7. Grant Plaintiffs an award of nominal and/or compensatory damages in an amount to be determined by the trier of fact; and,

8. Grant Plaintiffs' costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Florida's Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01-05, and Rule 54, and Title 28 U.S.C. § 1920; and,

9. Retain jurisdiction of this matter for the purpose of enforcing any Orders; and,

10. Grant Plaintiffs such other and further relief as may be just and proper.


Dated:      February 24, 2017.

/s/Frederick H. Nelson
Frederick H. Nelson, Esq.
Florida Bar No.: 0990523
Lead Trial Counsel for Plaintiffs
AMERICAN LIBERTIES INSTITUTE
P.O. Box 547503
Orlando, FL  32854-7503
Telephone: (407) 786-7007
Facsimile: (877) 786-3573
E-mail: rick@ali-usa.org

## **VERIFICATION SUPPORTING COMPLAINT**

Pursuant to 28 U.S. Code § 1746, I verify under penalty of perjury that the foregoing

facts are true and correct.

Executed this 16th day of February, 2017, at _Fort myers_, _Florida_.

Respectfully submitted,

John Kranert

27

## **VERIFICATION SUPPORTING COMPLAINT**

Pursuant to 28 U.S. Code § 1746, I verify under penalty of perjury that the foregoing

facts are true and correct.

Executed this 16ᵗʰ day of February, 2017, at _FORT MYERS_ , _Florida_ .

Respectfully submitted,

_Onica Kranert_

Onica Kranert

28

## VERIFICATION SUPPORTING COMPLAINT

Pursuant to 28 U.S. Code § 1746, I verify under penalty of perjury that the foregoing

facts are true and correct.

Executed this 19 day of February, 2017, at _north Port , Florida._

Respectfully submitted,

_____
Vitaliy Ariskin

29